[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11443

_____

D.C. Docket No: 3:09-cv-00335-HLA-JBT

CHRISTOPHER GRECO,

                        Interested Party-Appellant,

JOHN DEMSHECK,
PALMETTO PROPERTIES DEVELOPMENT, LLC,
individually and on behalf of all others similarly situated,

                        Plaintiffs-Appellees,

versus

GINN DEVELOPMENT COMPANY, LLC,

                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 2, 2015)

Before MARTIN and ROSENBAUM, Circuit Judges, and PROCTOR,[*] District Judge.

_____

     [*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

PROCTOR, District Judge:

In this appeal, a lone objecting class member challenges the district court's approval of a class action settlement. Appellant Christopher Greco argues that the district court erred in finding that (1) the settlement was "fair, reasonable and adequate" under Federal Rule of Civil Procedure 23(e), and (2) the class members' right to due process was not deprived by the manner in which notice of the proposed settlement was given to the class. After reviewing the record, including the parties' briefs and the transcript of the fairness hearing, and with the benefit of oral argument, we affirm.

I.   BACKGROUND

In his class action complaint, Plaintiff John Demshek, "on behalf of a class of all persons or entities that purchased real estate in one of Defendants' residential or resort developments," alleged that: Defendants Ginn Development Company, LLC ("Ginn") and Lubert-Adler Partners, LP ("Lubert-Adler") developed, marketed, and sold residential real estate; Plaintiff and the putative class members had purchased real estate in Defendants' developments; and Defendants circumvented the requirements for the sale of such real estate. Plaintiff also alleged that these actions resulted in losses for Plaintiff and the putative class members, and profits to Defendants.

The class action complaint asserted causes of action under 15 U.S.C. §§ 1703 and 1707 (The Interstate Land Sales Full Disclosure Act ("ILSA")) and 18 U.S.C. §§ 1962(c) and (d) (Racketeer Influenced and Corrupt Organizations Act ("RICO")). Both Ginn and Lubert-Adler moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted Lubert-Adler's motion, but denied Ginn's motion. The district court (1) dismissed Plaintiff's ILSA claim under 15 U.S.C. § 1707 as to both Lubert-Adler and Ginn, with prejudice; (2) dismissed the ILSA claim under 15 U.S.C. § 1703 as to Lubert-Adler, with prejudice; and (3) dismissed the RICO claims pursuant to 18 U.S.C. § 1962(c) and (d) against Lubert-Adler, without prejudice. Because Plaintiff did not seek to amend the pleadings to reassert any claims against Lubert-Adler, it no longer remained a party to the case.

The remaining parties engaged in substantial discovery. They served initial disclosures and interrogatories and requests for production of documents. They exchanged almost 30,000 pages of documents, coordinated the production of electronically stored information, worked toward scheduling depositions, and prepared to disclose expert witnesses.

## II.   SUMMARY OF RELEVANT FACTS

Settlement negotiations in this matter first occurred during a court-ordered status conference on March 11, 2010. On April 28, 2010, the district court entered

an order appointing Jonathan B. Marks, the former Vice-Chairman of J.A.M.S/ Endispute and a member of the International Academy of Mediators and the American College of Civil Trial Mediators, as mediator. The parties conducted four in-person mediations over the course of more than two years. Marks consistently expressed his approval of the parties' conduct during their negotiations.

In June 2012, while the Parties continued their mediation efforts, Ginn moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Ginn argued that: (1) Plaintiffs had failed to plead sufficient facts (as opposed to legal conclusions) showing that Ginn engaged in or conspired to engage in a pattern of racketeering activity; (2) Plaintiffs had failed to plead a plausible fraud scheme and also had not plead necessary predicate acts with Rule 9(b) particularity; and (3) Plaintiffs had not adequately pled proximate cause.

During the summer of 2012, while that motion was pending, the parties reached an agreement in principle regarding settlement. However, the parties continued to negotiate the terms of the settlement until Plaintiff moved for preliminary approval of the settlement in July 2013.

On September 30, 2013, the district court entered an order preliminarily approving the proposed settlement. In its order, the district court conditionally certified a settlement class consisting of "[a]ll entities and natural persons that took

title to real estate . . . in a development operated or developed by Ginn . . . in connection with a purchase contract that was fully executed between April 13, 2006 and April 13, 2009 . . . ." The order specified the manner in which the parties were to provide notice to the members of the settlement class.

Pursuant to the class notice, settlement class members were given an opportunity to file a claim, request exclusion from the settlement class, and/or object to the proposed settlement. A joint objection was filed on behalf of Appellant Christopher Greco, Robert Torr, and J. Scott Simmons. Gary W. Francis filed an objection on his own behalf. However, all objectors other than Appellant Greco successfully opted out of the settlement class prior to the fairness hearing. Greco did not opt out. In fact, he moved to intervene in the action. He was the lone objector to the settlement to appear at the fairness hearing.

In November 2006, Greco had purchased a lot for $259,000.00 in the Ginn development named Cobblestone Park, near Columbia, South Carolina. Greco claimed Defendants fraudulently induced him to pay this amount and that the lot in reality had a <u>de minimis</u>, artificially inflated value. Greco also asserted that, as a result of Defendants' conduct, he lost the purchase price he paid for the property, he was subjected to foreclosure, and his credit was virtually destroyed.

The district court denied Greco's motion to intervene. However, the district court granted Greco an additional fourteen days after the fairness hearing to opt out of the settlement class. Greco, unlike the other objectors, declined that invitation.

The district court overruled Greco's objections, and granted final approval of the settlement on March 5, 2014. In its Order and Judgment Approving Class-Action Settlement and Directing Notice of Final Approval, the district court astutely noted the interesting fact that Greco's counsel was also counsel in a competing, parallel action[1] that also asserted class claims, some of which would be barred by the final certification of the class in this case.

On April 4, 2014, Greco timely filed this appeal.

## III. STANDARD OF REVIEW

We review the approval of a class action settlement for abuse of discretion. Day v. Persels & Assocs., LLC, 729 F.3d 1309, 1316 (11th Cir. 2013). "A district court's decision will be overturned only upon a clear showing of abuse of discretion." Holmes v. Cont'l Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983). A district court abuses its discretion only "if it applies an incorrect legal standard,

---

[1] In that parallel putative class action, Plaintiffs' counsel was given four opportunities to state viable claims against Defendants, including Ginn and Lubert-Adler. However, even Plaintiffs' Third Amended Complaint was dismissed because it "fail[ed] to adequately allege causation." Lawrie v. Ginn Dev. Co., LLC, No. 3:09-CV-446-J-32JBT, 2014 WL 4788067, *3 (M.D. Fla. Sept. 19, 2014). Although Plaintiffs' initial complaint, and their first and second amended complaints were dismissed without prejudice, the Third Amended Complaint was dismissed with prejudice.

6

applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1068 (11th Cir. 2014) (quoting Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010)). This deferential standard applies not only because settlements are favored, but also because "[t]rial courts generally have a greater familiarity with the factual issues and legal arguments in the lawsuit, and therefore can make an evaluation of the likely outcome were the lawsuit to be fully tried." United States v. City of Miami, 614 F.2d 1322, 1334–335 (5th Cir. 1980).[2]

## IV. DISCUSSION

Greco argues that the district court's decision approving this class action settlement should be reversed for two reasons. First, he argues that the district court erred in finding the settlement to be fair, adequate and reasonable. Second, he argues that the district court erred in finding that the class notice satisfied due process requirements. We address each argument in turn.

    **A.**    **The Settlement was Fair, Adequate and Reasonable and Not the Product of Collusion**

In order to approve a settlement, a district court must find that the settlement "is fair, adequate and reasonable and is not the product of collusion between the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

parties." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977). In making this determination, we have said a district court should consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). But a district court may also rely upon the judgment of experienced counsel for the parties. Cotton, 559 F.2d at 1330. Indeed, absent fraud, collusion, or the like, the district court "should be hesitant to substitute its own judgment for that of counsel." Id. The trial court should examine the settlement in light of the objections, and provide a reasoned response to those objections. Id. at 1331.

Here, the record shows that the district court properly considered all of the appropriate factors, explained its findings, and addressed Greco's objections head on. The district court gave Greco the opportunity to argue his objections at the fairness hearing and an extension of time to opt out of the settlement. Thereafter, the district court explained in detail why Greco's objections were without merit.

First, the district court properly found that there was no evidence of fraud or collusion in the negotiation of the settlement. Although Greco's objection argued that the release of Lubert-Adler demonstrates that the settlement was the result of collusion between the parties, he abandoned this position at the fairness hearing.

8

In fact, at the hearing, Greco's counsel made this clear: "I'm not alleging fraudulent collusion. What I'm alleging is inadequate representation."

After making this finding, the district court then addressed each of the Bennett factors in evaluating whether the settlement was fair, reasonable and adequate. We agree with the district court's well-reasoned application of those factors.

In assessing the likelihood of success at trial, the district court properly observed that there were substantial hurdles that affected the class's likelihood of succeeding on the merits of its claims. In fact, the district court noted that it was "unable to find a single instance where [a similar] action [against Ginn] has survived beyond the dispositive motions stage." As the district court explained, its "research evidence[d] a history of dismissed claims based on substantially similar fraud based claims alleged against Defendant, its subsidiaries and other associated entities." In addition, the district court analyzed the challenge Plaintiffs would face, if their claims did survive on the merits, in proving damages. The district court properly found that it would be "nearly impossible" for Plaintiffs to prove that Defendants' actions were the cause of their damages in light of the contemporaneous "sharp rise and subsequent crash" of virtually every housing market in United States.

The district court also explained that the unlikelihood of success negatively affected the second Bennett factor — the possible range of recovery. So, too, did Ginn's limited resources.[3] Ginn was, for all intents and purposes, not an ongoing business entity. Therefore, the source of any recovery was limited to insurance policies which may or may not have provided coverage as to any judgment. Moreover, these insurance policies were being substantially eroded by continuing defense costs incurred both in this litigation, and in defending other suits. That is, as the district court correctly observed, the fact that the case is "complex, expensive and time consuming," combined with the limited source of recovery, meant that the "range of possible recovery [continually] decreases."

As to the substance and volume of the opposition to the settlement, the district court noted that, although there were originally six objectors to the settlement, at the time of the fairness hearing, "Greco stands as the lone objector." The other initial objectors "successfully opted out of this action prior to the fairness hearing." Thus, Greco was the sole individual opposing the settlement. The district court properly considered that Greco (or his counsel) may have had an ulterior motive in objecting to the settlement, rather than opting out. See, e.g., In re Prudential Ins. Litig., 148 F.3d 283, 318 (3d Cir. 1998) (determining that in assessing the weight of objections to class settlement agreements, the district court

---

[3] At the hearing, Greco addressed Lubert-Adler's resources. But that discussion was irrelevant as Lubert-Adler was no longer a defendant in the case.

10

may properly consider the fact that the most vociferous objectors were persons enlisted by counsel seeking control of the litigation). The district court observed, "Mr. Greco's counsel is also counsel in Lawrie, a competing action that also asserts class based claims [against Ginn], some of which will be barred by the final certification of this Class. Although not initially convinced of an ulterior motive regarding Mr. Greco's objections, the Court now has serious concerns." There was nothing improper about the district court's concern about this fact.

Finally, the district court also properly considered the stage of the proceedings at which settlement was reached. The matter had been proceeding in the district court for nearly five years. During that time, it had proven to be "complex, expensive, and time consuming." Again, as the court noted, "the longer that Defendant(s) continue to successfully defend against these claims, the further the range of possible recovery decreases." Therefore, the district court correctly found that the stage of the proceedings at which the settlement was achieved weighed in favor of approval of the settlement.

We find that the district court properly applied the correct legal standard, did so in an entirely appropriate manner, and made no findings of fact that are clearly erroneous. Therefore, it did not abuse its discretion by approving the proposed settlement as fair, adequate, and reasonable.

### B.     The Class Notice Satisfied Due Process Requirements.

The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. See Fed.R.Civ.P. 23(e). "We have interpreted Rule 23 to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'" Faught v. American Home Shield Corp., 668 F.3d 1233, 1239 (11th Cir. 2011) (quoting In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1104–1105 (5th Cir. 1977)). As we have also noted, "'an overly detailed notice' has the potential to 'confuse class members and impermissibly encumber their rights to benefit from the action.'" Faught, 668 F.3d at 1239 (quoting In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d at 1104).

Greco argues that the Notice deprived class members of their right to due process in the following ways: (1) the Notice failed to apprise class members of the scope of the release; (2) the deadline for submitting objections was "extremely short;" and (3) the requirements for objections were "onerous" and too confusing and complex for pro se litigants.

First, the Notice did not set forth the scope of the release; however, the content of the notice apprised the class members that the settlement agreements were available for their review on various websites. As noted above, the Notice

need not contain "every material fact." Faught, 668 F.3d at 1239. In this instance, all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice.

Second, class members were allowed forty-five (45) days from mailing of the Notice to submit a claim, opt out, or object. "Courts have consistently held that 30 to 60 days between the mailing (or other dissemination) of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement." 2 McLaughlin on Class Actions § 6:18 (11th ed.) (citing, inter alia, DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 940, 946–47 (10th Cir. 2005) (approving a 32-day opt-out period); Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (approving notice mailed 31 days before the deadline for written objections and 45 days before the fairness hearing); Miller v. Republic Nat. Life Ins. Co., 559 F.2d 426, 430 (5th Cir. 1977) (holding a period of "almost four weeks between the mailing of the notices and the settlement hearing" was adequate); Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving notice mailed 26 days before the deadline for opting out of a settlement); Grunin v. International House of

Pancakes, 513 F.2d 114, 121 (8th Cir. 1975) (19 days' notice was enough time to object); United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co., 447 F.2d 647, 652 (7th Cir. 1971) (timing of notice was adequate where it was mailed on May 28 and fairness hearing was held on June 22)). Therefore, we conclude the forty-five day period to submit a claim, opt out, or object in this case was reasonable.

Finally, the Notice required certain information from class members seeking to object to the proposed settlement, including their full name, address and telephone number, information identifying the lot the objector purchased, and a written statement explaining the reasons for their objection, together with any legal support. Greco contends that this "for all practical purposes, requir[ed] [objectors] to seek out counsel in order to meet the above requirements." We disagree. The Notice did not require an objector to file legal or documentary support with their objections. Rather, the Notice simply required information regarding the basis for any objection so that it could be considered by the district court. There is nothing unreasonable about requiring an objector to explain the basis for the objection.

The Notice in this case was sufficient to inform class members of the terms of the settlement in a manner that allowed them to make their own determination regarding whether the settlement served their interests before deciding to participate, opt out, or object. See Int'l Union, United Auto., Aerospace, and

Agric. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir. 2007). Therefore, the Notice in this case was reasonable under the circumstances and satisfied requirements of due process.

### C. The Scope of the Release

Finally, Greco argues that the scope of the release contained in the settlement is overly broad and grossly unreasonable. We conclude this argument is without merit. The Notice contains the following summary of the effect of the release:

> Settlement Class members will be barred from pursuing lawsuits against Ginn or Lubert-Adler based on their purchase of Ginn Property directly from the Ginn Developers in a development operated or developed by the Ginn Developers for which the purchase contract was executed during the aforementioned time frame. Thus, if you want to bring your own lawsuit against Ginn (or any of its affiliates) or Lubert-Adler (or any of its affiliates) relating to your purchase of such Ginn Property, you must exclude yourself from this settlement.

The Notice also contains a link which permits class members to review the entire settlement agreement, including the release. The relevant portion of the Settlement Agreement's release provides as follows:

> Plaintiff and the Settlement Class Members . . . hereby release and forever discharge Defendants and each of their respective past or . . . principals, . . . from any and all charges, complaints, claims, counterclaims, third-party claims, defenses, liabilities, obligations, promises, agreements, controversies, demands, damages, actions, causes of action or suits of any kind or nature <u>arising out of or related to the Litigation</u> [or] . . . arising from or related to any potential claim of abusive litigation or misconduct <u>arising out of the Litigation</u> . . . .

15

(Emphasis added).

The brief summary of the release, together with access to the full text of the release itself, is sufficient. We do "'not believe that due process requires further explanation of the effects of the release provision in addition to the clear meaning of the words of the release.'" Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2nd Cir. 2005) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 739 F.Supp. 896, 902 (S.D. N.Y. 1990)); see also Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1317–18 (3d Cir. 1993); Maher v. Zapata Corp., 714 F.2d 436, 452–53 (5th Cir. 1983)).

Furthermore, Greco's argument that class members have waived all defenses to future foreclosures or suits on promissory notes is simply inapposite. The release properly settles all matters between the class members and released parties "arising out of or related to the Litigation." That is, the release covers claims based on the same factual predicate as the litigation being settled. See In re Corrugated Container Antitrust Litig., 643 F.2d 195, 221 (5th Cir.1981) (federal court "may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint").

The district court properly held that the release "is tailored to prevent the relitigation of settled questions at the core of this class action." If Greco was

displeased with the consideration provided to him under the settlement in exchange for this release, he was free (as all other original objectors chose to do) to opt out of the settlement. He chose not to do so; therefore, he is bound by the settlement.

## V. CONCLUSION

After carefully reviewing the settlement in this case, we conclude that the district court did <u>not</u> use the wrong legal standards, apply our precedents unreasonably or incorrectly, follow improper procedures, or make clearly erroneous findings of fact in deciding that the settlement was fair, reasonable, and adequate. Accordingly, we affirm the district court's Final Order and Judgment Approving the Class Action Settlement.

For all these reasons, the district court's findings and conclusions, and its approval of this class action settlement are

**AFFIRMED**.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 02, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 14-11443-DD
Case Style: Christopher Greco, et al v. Ginn Development Company, et al
District Court Docket No: 3:09-cv-00335-HLA-JBT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, DD at (404) 335-6173.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs